USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/8/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MSP RECOVERY CLAIMS, SERIES LLC, a Delaware limited liability company, and Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC,

                     Plaintiffs,

-against-

TECHNOLOGY INSURANCE COMPANY, INC., a Delaware corporation; AMTRUST FINANCIAL SERVICES, INC., a Delaware corporation,

                     Defendants.

18 Civ. 8036 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, MSP Recovery Claims, Series LLC and Series 16-08-483 (a designated series of MSP Recovery Claims, Series LLC), bring this putative class action under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act ("MSPA"), to recover conditional Medicare payments against Defendants Technology Insurance Company, Inc. ("TIC"), Amtrust Financial Services, Inc. ("AMFSI"), and Amtrust North America, Inc. ("Amtrust"). Compl., ECF No. 33. Defendants move to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 46. For the reasons stated below, Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

**BACKGROUND**

I.   <u>Legal Background</u>

Under Part C of the Medicare Act, "Medicare enrollees may elect to receive their benefits from private insurers, called [Medicare Advantage] organizations, rather than from the government." *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 189 (S.D.N.Y. 2012). The

MSPA "requires that entities known as 'primary payers,' such as insurance companies, must reimburse Medicare (or, as in this case, a Medicare Advantage Organization . . . for payments for medical items and services that were covered by the insurance company's policy." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, No. 18 Civ. 1458, 2019 WL 1490531, *1 (M.D. Fla. Apr. 4, 2019). "Medicare generally may not pay for any item or service if 'payment has been made, or can reasonably be expected to be made, with respect to the item or service' under a primary plan." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 95 (2d Cir. 2009) (quoting 42 U.S.C. § 1395y(b)(2)(A)(i)). Where "the relevant primary plan 'has not made or cannot reasonably be expected to make payment with respect to such item or service promptly,' Medicare may make the necessary payment," also known as a conditional payment. *Id.* (quoting 42 U.S.C. § 1395y(b)(2)(B)(i)). The primary plan must, however, reimburse the Medicare Advantage Organization ("MAO") for such a payment "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 USC § 1395y(b)(2)(B)(ii).

II. Facts

"When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Plaintiffs bring this suit under the MSPA alleging "Defendants' systematic and uniform failure to reimburse conditional Medicare payments." Compl. ¶ 1. According to the complaint, Defendants, insurance companies,[1] have repeatedly

---

[1] Defendants dispute that all Defendants are insurance companies. Defendants admit that TIC is an insurance company specializing in the issuance of commercial liability and worker's compensation insurance. Def. Mem. at 6, ECF No. 47. Defendants contend, however, that neither AMFSI nor Amtrust are insurance companies as the former is a company that holds the stock of insurance companies and the latter is a service provider to TIC. *Id.*

2

failed to reimburse payments made on behalf of enrollees "for medical expenses resulting from injuries sustained in an accident." *Id.* ¶ 2; *see also id.* ¶¶ 129–130. Defendants are "primary plan[s]" under § 1395y(b)(2)(A) because "[they] are [] liability insurer[s]." Compl. ¶ 115.

Plaintiffs have designed and developed a software system (the "MSP System"), that allows Plaintiffs to "capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide." *Id.* ¶ 122. "The MSP System captures data from different sources to identify the [c]lass [m]ember enrollees' medical expenses incurred as a result of an accident and which should have been reimbursed for by Defendants after they entered into a settlement." *Id.* Plaintiffs then "merge the Defendants' data with the information available on the MSP System to discover and identify a Medicare eligible person for whom reimbursement of secondary medical payments should have been made, along with any information stored as to potential class members." *Id.* ¶ 123. The MSP System utilizes medical diagnosis and procedure codes "to identify and obtain any information regarding an enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider." *Id.* ¶ 124.

The complaint sets forth 16 representative claims that "demonstrate Plaintiffs' right to recover for Defendants' failure to meet its reimbursement obligations under the" MSPA. Compl. at 6; *see also id.* ¶¶ 7–98. Plaintiffs describe "Defendants' failure to reimburse conditional payments" with respect to a number of individuals enrolled in a Medicare Advantage plan issued and administered by MAO Health Insurance Plan of Greater New York ("HIP"), *id.* ¶ 7, and "how that failure caused an injury in fact to an MAO, which subsequently assigned its recovery rights to Plaintiffs." *Id.* ¶ 6. The Court highlights two representative claims for discussion purposes:

- The M.P.1. claim: Between December 8, 2015, and April 11, 2018, M.P.1. was injured in an accident and the tortfeasor was insured by Defendant Amtrust, which did not pay for M.P.1.'s accident-related injuries. *Id.* at ¶¶ 14, 18.

- The D.P. claim: On September 26, 2017, D.P. was injured in an accident and the tortfeasor was insured by Defendant Amtrust, which did not pay for D.P.'s accident-related injuries. *Id.* at ¶¶ 74, 77.

Plaintiffs are not MAOs. Rather, they are assignees of HIP, an MAO. *See* Compl. ¶¶ 100–101; *see also* Assignment Agreement, ECF No. 33-56. The assignment agreement attached as Exhibit Q to the complaint provides in part:

> W[hereas], [a]ssignor has certain legal and equitable rights to seek reimbursement and/or recover payments from primary payers . . . [a]ssignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to [a]ssignee, and any of its successors and assigns, any and all of [a]ssignor's right, title, ownership and interest in and to all [a]ssigned Medicare [r]ecovery [c]laims . . . .

Assignment Agreement at 2–3. The assignment agreement assigns only those rights concerning "Medicare [h]ealth [c]are [s]ervices that were rendered and paid for by [HIP] during the six . . . year period beginning September 29, 2011 and ending September 29, 2017." *Id.* No assignment is made for claims that "have been assigned to and/or are being pursued by other recovery vendors." *Id.*

**DISCUSSION**

I. <u>Legal Standard</u>

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks and citation omitted). "Standing is the threshold question in every

4

federal case, determining the power of the court to entertain the suit." *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (internal quotation marks and citation omitted).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–561 (alternations, internal quotation marks, and citations omitted). "Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envntl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

In certain cases, an "assignee of a claim [has] standing to assert the injury in fact suffered by the assignor." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). After obtaining an assignment "in exchange for some consideration running from it to the assignor," the assignee "replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002).

"Plaintiff bears the burden of alleging sufficient facts to support standing, although at this stage, [courts] accept as true all material facts in the complaint and construe the complaint in favor of the complaining party." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091,

5

1095–96 (2d Cir. 1997). To survive a 12(b)(1) motion to dismiss, the pleadings "must allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011).

II. Analysis

    A. Standing

Standing doctrine requires Plaintiffs to show: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–561. Here, the injury in fact is "Defendants' failure to reimburse conditional payments" which "caused an injury in fact to" HIP. Compl. ¶ 6. Plaintiffs allege that they can assert this injury because HIP "subsequently assigned its recovery rights" to them. *Id.* ¶ 6. Plaintiffs may have standing if they are able to show that they replaced HIP "with respect to the claim . . . assigned, and thus stand[] in the assignor's stead with respect to both injury and remedy." *Physicians Health Servs.*, 287 F.3d at 117. Defendants contend that although Plaintiffs allege that they received an assignment from HIP, the complaint does not adequately allege facts sufficient to show that the claims asserted in the complaint fall within the scope of that assignment. Def. Mem. at 10. The Court agrees.

HIP's assignment does not assign all of their "Medicare [r]ecovery [c]laims" to Plaintiffs. *See* Assignment Agreement. Rather, Plaintiffs received rights only to claims that (1) were "rendered and paid for by [HIP] during the six . . . year period beginning September 29, 2011 and ending September 29, 2017," and (2) were not "assigned to and/or are being pursued by other recovery vendors." Assignment Agreement at 2–3; *see also* Def. Mem. at 11.

The Complaint does not specify the date on which HIP paid for any charges. *See generally* Compl. ¶¶ 7–99. Without this information, the Court cannot assess whether any of the representative claims actually fall within the scope of the assignment, and therefore, whether Plaintiffs have standing to sue. As a result, Plaintiffs' claim is merely "conjectural or hypothetical" and not "concrete and particularized." *Lujan*, 504 U.S. at 560.

Moreover, a review of the complaint suggests that standing is likely lacking, with respect to at least some of the representative claims. For example, Plaintiffs cite the case of D.P. as a representative claim "that demonstrate[s] Plaintiffs' right to recover for Defendants' failure to meet its reimbursement obligations." Compl. at 6. Plaintiffs allege that D.P. was enrolled in a HIP Medicare Advantage plan, was injured in an accident on September 26, 2017, and HIP paid for D.P.'s accident-related expenses. Compl. ¶¶ 73–76. Because Plaintiffs do not allege when HIP paid for these services, the Court does not and cannot know if HIP's payment was made between September 29, 2011 and September 29, 2017, and thus, whether Plaintiffs have been assigned the rights to recover conditional payments made by HIP with respect to D.P. But it is highly unlikely that HIP received and paid a bill for D.P.'s services within three days of the last day of the covered time period, September 29, 2017, making standing implausible in these circumstances. As Defendants point out, the case of D.P. is not "an isolated failing," as "several other claims are likewise based, at least in part, on services that were not even provided let alone paid, until after September 29, 2017." Def. Mem. at 12–13 (citing Compl. ¶¶ 40, 63, 69, 75).

This exercise is complicated further by the fact that with respect to a number of the representative claims, Plaintiffs not only fail to state when HIP paid for the services, they fail to specify when an accident giving rise to the conditional payments even occurred. In

these cases, Plaintiffs allege a range for when an enrollee was injured in an accident as opposed to an actual date. Compl. ¶ 14 ("between December 8, 2015, and April 11, 2018, M.P.1. was injured in an accident"); *see also id.* ¶¶ 26, 51, 95. If in the case of M.P.1., the accident took place in April 11, 2018, the claim would clearly fall outside of the scope of the assignment. This type of shotgun pleading fails to "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Amidax Trading Grp.*, 671 F.3d at 145. If anything, these facts plausibly suggest that Plaintiffs do not have standing to sue.

The complaint also fails to allege that the representative claims were never assigned to or are being pursued by other recovery vendors. *See* Assignment Agreement at 2–3. The Court agrees with Defendants that this flaw is fatal to Plaintiffs' standing argument. The assignment provision explicitly excludes from assignment claims that "have been assigned to and/or are being pursued by other recovery vendors." *Id.* In order to establish that each representative claim was assigned to Plaintiffs, they "must allege that, as of September 29, 2017, the representative claim had not previously been assigned to another recovery vendor or was not already being pursued by another recovery vendor." Def Mem. at 13. Because Plaintiffs have failed to do so, they cannot demonstrate that they have standing.

      B. Dismissal Without Prejudice

The Court is well aware that this action is one of many similar actions filed by Plaintiffs across the country. This Court's decision to dismiss the complaint for lack of standing is similarly not singular, as it joins a growing contingent of courts that have dismissed complaints brought by Plaintiffs due to various standing defects. *See, e.g.*, *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 19 Civ. 211, 2019 WL 4222654, at *5–6 (N.D.N.Y. Sept. 5, 2019) (dismissing claim for lack of standing as plaintiff failed to properly

allege that they had been assigned the right to sue); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019) (affirming district court's decision to dismiss complaint brought by plaintiffs, including MSP Recovery Claims, Series LLC, for lack of standing); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 322 F. Supp. 3d 1273, 1283 n.4 (S.D. Fla. 2018), *appeal filed*, No. 18-13312 (11th Cir. Aug. 6, 2018) (stating that cases dismissed for lack of subject matter jurisdiction are typically dismissed without prejudice, but dismissing the action with prejudice given the multiple opportunities plaintiffs were given to amend their complaint and the unlikelihood that Plaintiffs could overcome the lack of subject matter jurisdiction); *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17 Civ. 23841, 2018 WL 1953861, at *6 (S.D. Fla. Apr. 25, 2018), *appeal dismissed sub nom.*, *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, No. 18-12139, 2018 WL 6132508 (11th Cir. Nov. 8, 2018) (dismissing case where Plaintiff failed to demonstrate standing "[d]espite [plaintiff's] fourteenth attempt at pleading its claims.").

Because the Court dismisses the claim for lack of standing, dismissal must be without prejudice. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." (internal quotation marks and citation omitted)). Without jurisdiction, the Court "lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016).[2] Accordingly, the complaint is dismissed without prejudice.

---

[2] Because the Court lacks jurisdiction to adjudicate the merits of the case, the Court does not address Defendants' arguments to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 46 and close this case.

SO ORDERED.

Dated: January 8, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge